AO 91 (Rev. 11/11)  Criminal Complaint    (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 2:24-mj-287 |
| TERRANCE TREMALE COLVIN | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of May 30, 2024 in the county of Delaware in the Southern District of Ohio, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a) and 841(b)(1)(C) | Knowingly or Intentionally Distribute, or Possess with Intent to Distribute, a Controlled Substance, to wit: Methamphetamine |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

ROBERT KUKOV
Digitally signed by ROBERT KUKOV
Date: 2024.05.31 08:04:37 -04'00'

*Complainant's signature*

Robert Kukovec, Special Agent (HSI)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date: 05/31/2024

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, **Robert Kukovec**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with Homeland Security Investigations (HSI) within the United States Department of Homeland Security.  I have been employed as a Special Agent since April 2002, and I am currently assigned to the HSI office in Columbus, Ohio.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I am currently assigned to a multi-jurisdictional narcotics task force in the central Ohio area, and I am cross designated to investigate violations of Title 21 of the United States Code. Prior to my employment with HSI (and formerly U.S. Customs), I was employed as a police officer in the state of Ohio for approximately 8.5 years.  My responsibilities and duties include the investigation and enforcement of federal laws and regulations related to customs and immigration violations, including but not limited to narcotics, financial crimes, fraud, and violations of the Immigration and Nationality Act.

2. The information set forth in this affidavit is based upon my knowledge, training, experience, and participation in investigations involving the smuggling, possession, distribution, and storage of narcotics and narcotics proceeds.  This information is also based on the knowledge, training, experience, and investigations conducted by fellow law enforcement officers, which have been reported to me either directly or indirectly.  I believe this information to be true and reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  Your affiant did not withhold any information or evidence that would negate probable cause.  I know it is a violation of 21 U.S.C.

§ 841(a) and § 841(b)(1)(C) for any person to knowingly or intentionally distribute, or possess with intent to distribute, a controlled substance, to wit: more than one (1) kilogram of methamphetamine.

## PROBABLE CAUSE

3. On May 27, 2024, HSI Columbus was notified by HSI Albuquerque in New Mexico that the New Mexico State Police stopped a commercial car hauler for a traffic violation near Grants, New Mexico. During the stop, and while inspecting the shipping documents for the vehicles on the car hauler, several criminal indicators were observed with one particular vehicle on the car hauler, a white 2018 Honda Pilot (VIN #5FNYF6H97HB068865) displaying an expired Oregon transporter plate TN03580 (the SUBJECT VEHICLE). Through investigation, investigators obtained legal authority to search the SUBJECT VEHICLE. Upon further examination of the SUBJECT VEHICLE, investigators discovered two hidden compartments in the SUBJECT VEHICLE, one in the center console and one under the floorboard of the rear cargo area, both loaded with bulk amounts of narcotics.

4. HSI Albuquerque was notified and responded to assist with processing the seizure. It was later discovered that the narcotics seized from the SUBJECT VEHICLE from the car hauler totaled approximately 21 kilograms of methamphetamine and seven (7) kilograms of cocaine, both testing presumptive positive with the TruNarc handheld narcotics analyzer. According to the shipping invoice, the SUBJECT VEHICLE was listed as being shipped from Inglewood, California and was supposed to be delivered to 1300 Polaris Parkway in Columbus, Ohio, which is part of the Polaris Fashion Place Mall (Delaware County) within the Southern District of Ohio.

5. On May 30, 2024, HSI Columbus, HSI Albuquerque, and the Delaware County Drug Task Force arranged for the controlled delivery of the SUBJECT VEHICLE at 1300 Polaris Parkway in Columbus, Ohio. Law enforcement kept approximately one (1) kilogram of methamphetamine in the SUBJECT VEHICLE for the controlled delivery and replaced the rest of the narcotics with sham

drugs. Investigators also obtained a GPS vehicle tracker search warrant through the U.S. District Court in the Southern District of Ohio to place on the SUBJECT VEHICLE in order to keep track of the SUBJECT VEHICLE, identify where it travelled to after the controlled delivery, help to possibly identify other co-conspirators or potential "stash" locations where other narcotics might be stored, and help to prevent the loss/destruction of any narcotics during the controlled delivery.

6.       As explained, during the consent search of the SUBJECT VEHICLE, law enforcement discovered two hidden compartments, one in the center console and one under the floorboard of the rear cargo area, both loaded with bulk amounts of narcotics. During the controlled delivery, the hidden compartments contained the narcotics and sham narcotics. Your affiant also obtained a search warrant for the SUBJECT VEHICLE through the U.S. District Court in the Southern District of Ohio in order to wire the hidden compartments with a sensor, which would alert law enforcement when such compartments were opened after the controlled delivery. Furthermore, to prevent the loss and destruction of evidence, your affiant also obtained authorization through this search warrant to install a disabler switch on the SUBJECT VEHICLE before the controlled delivery. Such switches – commonly known as "kill switches" – can be activated by law enforcement to disable the vehicle, to prevent it from being driven away once investigators determine the vehicle has been delivered to the ultimate recipient and/or the hidden compartments have been accessed. This disabling device can also prevent the vehicle from being driven away during the controlled delivery to help prevent the loss of any narcotics within the vehicle as well as prevent the vehicle from fleeing from law enforcement and endangering the lives of law enforcement officials and/or the general public.

7.       On May 30, 2024, after law enforcement officials arranged for the delivery of the SUBJECT VEHICLE to 1300 Polaris Parkway in Columbus, Ohio, an unknown black male (later identified as **Terrance Tremale COLVIN**) eventually showed up at the meet location in an Uber and took custody of the SUBJECT VEHICLE. Investigators followed the SUBJECT VEHICLE to

801 Polaris Parkway in Columbus, Ohio (the 801 Polaris Apartments), hereinafter referred to as the TARGET LOCATION.

8. Upon arrival at the TARGET LOCATION, COLVIN accessed a secure parking garage at that apartment complex (801 Polaris Apartments) utilizing a key card. By the time investigators were able to access the parking garage, the TARGET VEHICLE was parked on the third floor of the parking garage next to a black 2015 Cadillac Escalade (Ohio registration JZV9422) with no one in the vehicle. Surveillance was established on the TARGET VEHICLE since neither of the hidden compartments had been accessed yet, per the trip wires wired into each compartment. After approximately 30 minutes, COLVIN returned to the TARGET VEHICLE in the parking garage of that apartment complex and entered the TARGET VEHICLE. COLVIN was also observed unlocking the black Cadillac Escalade parked next to the TARGET VEHICLE. Eventually, COLVIN exited the TARGET VEHICLE and retrieved a duffle bag from the rear of the Cadillac Escalade and returned to the driver's seat of the TARGET VEHICLE. Shortly thereafter, investigators were alerted to the activation by one of the sensors in the center console hidden compartment of the SUBJECT VEHICLE. Your affiant submits that such evidence indicates that the individual(s) who took control of the SUBJECT VEHICLE after the controlled delivery did so knowing that the SUBJECT VEHICLE contained narcotics. At that point, a tactical team moved in and took custody of COLVIN while he was still seated in the driver's seat of the TARGET VEHICLE. Located next to him on the passenger seat was the duffle bag COLVIN retrieved from the black Cadillac Escalade loaded with the sham drugs investigators placed inside the center console hidden compartment. The center console hidden compartment was not readily accessible and required specific knowledge of that location and required specific steps to be taken in order to open it since it was not a factory compartment and was specifically built to conceal items. COLVIN had in his possession keys to both

the Cadillac Escalade and the TARGET VEHICLE at the time of his arrest. When asked for his biographical information, COLVIN provided his name, but denied living at that apartment complex.

9. Investigators then served a subpoena on the 801 Polaris Apartments and management was able to pull video of COLVIN entering the apartment building from the parking garage during his initial arrival and then exiting the apartment building shortly before being arrested in the parking garage. The aforementioned key ring for the black 2015 Cadillac Escalade (Ohio registration JZV9422) had a key fob on it along with an apartment key and a mailbox key. Apartment management confirmed the key fob belonged to Apartment 371 at the TARGET LOCATION and was used to access the exterior building doors. The mailbox key was also for Apartment 371 at the TARGET LOCATION, and investigators determined the apartment key worked on the apartment door for Apartment 371 at the TARGET LOCATION. Furthermore, the key card used to access the parking garage that was in COLVIN's possession at the time of his arrest also belonged to Apartment 371 at the TARGET LOCATION. Based on the rental paperwork received from management, the apartment was leased in the name of "Tevin Cance" and the rental paperwork included a photocopy of the identification (Ohio driver's license) for the renter. This identification was discovered to be fraudulent. A search for the number on the identification card returned to an individual other than Cance, and that individual was deceased. However, the information on this identification was the same date of birth of COLVIN and the driver's license number was one digit off from COLVIN's real Ohio driver's license number. Also, the photograph on the identification resembled COLVIN. The phone number listed on the rental application for Apartment 371 at the TARGET LOCATION also returned to COLVIN through a check of open-source databases and also appeared to be linked to COLVIN per his CashApp account.

10. Based on the facts listed above, investigators obtained a search warrant for Apartment 371 at the TARGET LOCATION through the U.S. District Court in the Southern District of Ohio.

The search warrant resulted in the discovery and seizure of additional bulk amounts of narcotics, including suspected methamphetamine, cocaine, and fentanyl. One large partial brick of narcotics seized tested presumptive positive for fentanyl and another small baggie of a crystal-like substance tested presumptive positive for methamphetamine utilizing the TruNarc handheld narcotics analyzer. Also discovered and seized during execution of the search warrant were three (3) loaded firearms, various ammunition, several kilogram drug presses, an industrial mixer, narcotics packaging material, and digital scales.

11. Record checks on COLVIN indicated he was a convicted felon with a lengthy criminal history, including arrests and/or convictions for various narcotics and weapons-related charges, kidnapping, receiving stolen property, driving under the influence, obstructing justice, and disorderly conduct.

## **CONCLUSION**

12. Based on the facts set forth in this Affidavit, there is probable cause to believe that on May 30, 2024, in the Southern District of Ohio and elsewhere, **Terrance Tremale COLVIN**, did knowingly or intentionally distribute, or possess with intent to distribute, a controlled substance, to wit: more than one (1) kilogram of methamphetamine, in violation of 21 U.S.C. §§ 841 and 841(b)(1)(C).

ROBERT KUKOVEC
Digitally signed by ROBERT KUKOVEC
Date: 2024.05.31 08:05:25 -04'00'

Robert Kukovec
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this 31st day of May, 2024.

Kimberly A. Jolson
United States Magistrate Judge

6